GENERAL ELECTRIC COMPANY *v.* HANS AND SHELDON d.b.a. HANS-SHELDON, CONTRACTORS

No. 41930 September 25, 1961 133 So. 2d 275

120

*Mize, Thompson & Mize,* Gulfport, for appellant.

*Karl Wiesenberg,* Pascagoula, for appellees.

ETHRIDGE, J.

Appellees, Hans and Sheldon, brought this action in the Circuit Court of Jackson County against appellant, General Electric Company (GE), to recover on an oral contract for the rental of a two and one-half yard dragline. The issues, existence of contract, agency, and non-existence of primary obligation, were submitted to a jury which returned a verdict for plaintiff, and judgment was rendered on it.

General Electric was the prime contractor on a Federal Government project at the Keesler Air Force Base in Biloxi. Appellees' dragline was used on that project for two weeks. It performed the job properly, and there is no dispute about the amount of the rental. The question is who is liable for it.

General Electric subcontracted the work to Almond Electric Company, who in turn subcontracted part of it, including dragline operations, to Jack Autrey. Plaintiff's evidence, accepted by the jury on proper instructions, showed that they had the dragline consigned to

GE at the air base, and, when it arrived, GE's agent advised them it should have been consigned to Autrey, who had the subcontract. Sheldon refused to unload it unless General Electric would guarantee he would get his money for the job. He did not know Autrey. Hathaway, GE's installation supervisor of this project, told him to go ahead and unload, that GE would assure him of the payment. Following that promise, Sheldon had the dragline unloaded and operated it on the job.

 On conflicting evidence, the jury was warranted in finding that appellant's agent promised appellees it would pay the rental, and in reliance on that promise, appellees unloaded the dragline and used it; that Hathaway was General Electric's superior representative on this project, and he had the implied authority to make this contract.

Defendant contends, however, that this agreement falls within the statute of frauds, Miss. Code 1942, Rec., Sec. 264(a), being a promise to answer for the debt of another person, and therefore the agreement is unenforceable. Assuming defendant adequately raised this issue, we do not think it is valid, because the jury could find there was no primary obligation of another, which is necessary to bring Sheldon's agreement with GE within the statute of frauds.

Several days before the dragline was shipped to the air force base, Sheldon and Hans met with Keto and Faulks in Biloxi. The latter in fact were representatives of the second subcontractor, Autrey, but Sheldon and Hans were not so advised by these men. They were under the impression that the rental of the dragline was to be made to GE. This is supported by the fact that the machine was consigned to GE. When it arrived at the air base, Sheldon was told the consignment should be corrected to show Autrey rather than GE. In the meantime, however, Sheldon had the conversation with Hathaway, in which he promised to see that the rental was paid.

■■ ■ Appellant asserts there was an original, primary contract with Autrey through its agents Keto and Faulk. Manifestly the jury concluded that Sheldon and Hans did not know these men represented Autrey, and did not make any agreement with Autrey through them for the rental; that they thought they were renting it to GE and consigned it to that company. The first and only contract of rental, therefore, occurred and was with General Electric through its agent, Hathaway.

■■ ■ Hence there was no primary obligation of another person prior to Hathaway's agreement for appellant to pay the rental. It is essential that a primary obligation of some kind be incurred in order to bring the case within the statute. No question of the statute of frauds can arise where a promise is made by one if there is no primary obligation. 2 Williston, Contracts (Rev. Ed. 1936), Sec. 454. ■■ ■ A promise is not within this clause of the statute unless there is an obligation of some third person to the promisee. The third person must at some time be under a legal duty of performance to the promisee, a duty that will be discharged by the performance of the new promisor. 2 Corbin, Contracts (1950), Sec. 349.

■■ ■ The rights of the parties were fixed as of the time of the agreement between Sheldon and Hathaway as GE's project supervisor. The facts that subsequently Sheldon and another worker operated the dragline and were paid wages for that by Autrey, and that appellees on Hathaway's direction submitted a bill to Autrey and were given by Autrey an invalid check for part of the rental, do not estop them from asserting a contract with General Electric and from denying any primary obligation of Autrey.

Affirmed.

*McGehee, C. J.,* and *Arrington, McElroy* and *Rodgers, JJ.,* Concur.